DOUGLAS J. MICHELSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Michelson v. Commissioner
Docket No. 1563-89
United States Tax Court
T.C. Memo 1993-535; 1993 Tax Ct. Memo LEXIS 550; 66 T.C.M. (CCH) 1347; November 18, 1993, Filed *550 Decision will be entered under Rule 155. Douglas J. Michelson, pro se. For respondent: Pamelya P. Herndon. COHEN
COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent determined deficiencies of $ 12,139, $ 16,006, and $ 19,079 in petitioner's Federal income taxes for 1984, 1985, and 1986, respectively. Respondent also determined that petitioner was liable for additions to tax under sections 6653(a)(1)(A) and (B) and 6661. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The deficiencies were based on respondent's disallowance of Schedule C losses claimed in each year and a net operating loss carried forward from earlier years in which the same losses had been disallowed. Self-employment tax was determined by respondent on the gross income reported by petitioner as trade or business income. Respondent also disallowed, for lack of substantiation, deduction of items in dispute as expenses under section 212. Respondent determined that additions to tax were appropriate because petitioner intentionally disregarded rules or regulations in *551 claiming losses and deductions that had been disallowed through the examination of prior returns. The issues for decision are whether petitioner is entitled to further trial or whether the case should be disposed of on the existing record; whether petitioner was in a trade or business during the years in issue; and whether the additions to tax determined by respondent should be sustained. Because of the state of the record, as described below, we are unable to make any meaningful findings of fact. To the extent that factual background is helpful in understanding the context of this case, we refer to and incorporate the findings of fact set forth at Michelson v. Commissioner, T.C. Memo. 1990-27, affd. 951 F.2d 288 (10th Cir. 1991). Chronology
In 1982, 1984, and 1985, respondent sent to petitioner statutory notices determining deficiencies for the years 1976 through 1981. Those deficiencies resulted from respondent's disallowance of losses claimed in 1979 and 1980 and carried back or carried over to earlier years or to 1981, as well as other issues not present in this case. Respondent's determinations for 1976 through *552 1981 were tried over a period of 5 days, resulting in over 1,000 pages of transcript. Much of the trial time was consumed on a dispute over whether a commodity account maintained by petitioner at Merrill, Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch), was a trade or hedging account, as petitioner contended, or a speculative account, as Merrill Lynch contended in litigation commenced by petitioner against Merrill Lynch. Substantial trial time also was devoted to the details of an attempt by the Hunt family and others to corner the silver market in 1979 and 1980. Nonetheless, the trial record was devoid of any information as to petitioner's alleged transactions in metals, other than a few transactions on the commodity exchanges during 1979 and 1980. Michelson v. Commissioner, T.C. Memo. 1990-27, nn. 2, 3, & 6, affd. 951 F.2d 288 (10th Cir. 1991). In the earlier case, the Court concluded, among other things, that petitioner was not engaged in a trade or business as a dealer in metals in 1979 and 1980 and that any losses he sustained were capital losses, not ordinary losses. The Court refused to receive in evidence *553 a Memorandum Opinion and Order of the United States District Court for the District of New Mexico, filed August 12, 1982 (the District Court order), offered by petitioner as proof that he was a dealer in precious metals. Michelson v. Commissioner, supra. This Court's rulings were specifically affirmed by the Court of Appeals for the Tenth Circuit as follows: Our review of the record leads us to believe the tax court made no factual mistake in this case. The record amply supports the tax court's findings. For example, as to the tax court's characterization of Mr. Michelson as an investor who suffered capital rather than ordinary losses, the record indicates that prior to 1979, Mr. Michelson characterized his occupation as "investments" and reported his transactions to the revenue service accordingly. He never filed a Schedule C reporting his commodity transactions as involving gains or losses from the operation of a business until he sustained large trading losses on the silver futures market in 1979-1980. Notably, Mr. Michelson's market transactions in 1979-1980 were not materially different from those in earlier years. At no time was Mr. Michelson licensed to sell futures, *554 nor was he a member of any commodity exchange. Despite Mr. Michelson's assertion he was a dealer in metals, the record reflects the only physical metals ever owned by Mr. Michelson were 400 ounces of gold and 1,510,225 pounds of copper, held by means of negotiable warehouse receipts. Mr. Michelson acquired these metals on the commodity market and held both for a long period of time as one would an investment. The record further indicates that although Mr. Michelson's losses were due primarily to fluctuations in the silver market, he never owned any silver in its physical form. Moreover, the record reflects no acquisition of metal directly from any refinery or any off-exchange supplier, no separate business activity that utilized metals, and no frequent sales to customers or related merchandising activity. * * * Mr. Michelson sought to introduce a Memorandum Opinion and Order of the United States District Court for the District of New Mexico involving an independent civil action between Mr. Michelson and Merrill Lynch. In essence, the order dismissed twelve of seventeen counts asserted in Mr. Michelson's counterclaim against Merrill Lynch. Mr. Michelson offered the order as *555 evidence he was a "dealer" in metals. An introductory paragraph described Mr. Michelson as "a dealer in precious metals." The tax court refused to admit the order as evidence, observing that Mr. Michelson had not shown that the description of him as a "dealer" was anything more than background material, or that his alleged status as a dealer was a disputed issue resolved by the court in that case. Moreover, the government was not a party to that suit, and what might constitute a dealer for the purposes of the issues involved in that case was not controlling in the federal income tax context. As such, the tax court held the proffered evidence lacked any probative value. We agree. [Michelson v. Commissioner, 951 F.2d 288, 290 (10th Cir. 1991), affg. T.C. Memo. 1990-27.]
This case was first set for trial on October 2, 1989. Petitioner sent to the Court a "Notice of Motion" and a "Motion to Take Judicial Notice" in which he asked the Court to take judicial notice "that 'Michelson is a dealer in precious metal' has been found by the United States District Court for the District of New Mexico in a proceeding relating to *556 the matter before the Court and which must bear on it." The motion was based entirely on the District Court order, which, in the earlier trial, had been ruled inadmissible. Petitioner's motion was initially returned by the Deputy Clerk of the Court, with a letter explaining the following: The "Notice of Motion" is returned herewith. Under the Rules of the United States Tax Court, Rule 122, a case can only be submitted to the Court for opinion without trial if the parties agree to all evidence which is to be presented to the Court. Those agreed facts are presented to the Court as a Stipulation of Facts signed by both parties. The parties would generally at the same time submit a joint motion to submit the case to the Court without trial. You should consult with counsel for respondent if you believe your case is subject to the above procedures. Alternatively, if no facts are in dispute or no evidence needs to be introduced and only a question of law remains for decision, you may file a motion for summary judgment. See Rule 121, a copy of which is enclosed for your reference. Any motions submitted to the Court are to be accompanied by four conformed copies.
In response *557 to the Deputy Clerk's attempt to be helpful to petitioner, petitioner sent a letter to the Judge who would be presiding at the trial session, making unfounded charges and threats against the Deputy Clerk. Petitioner's motion was then filed and denied. Thereafter, the case was continued three times upon agreement of the parties to await finality of the appeal from the prior case. By notice sent December 10, 1992, the case was set for trial during the 1-week session scheduled to commence in Albuquerque, New Mexico, on May 17, 1993. The Notice Setting Case for Trial stated, among other things, as follows: If there are a number of cases to be tried, the Court will fix the time of each trial at the end of the calendar call. The Court makes every effort to suit the convenience of the petitioners in fixing trial times, but because of conflicting requests received from petitioners, the final determination of trial times must rest in the Court's discretion.
Attached to the notice was a Standing Pre-Trial Order of the Court setting forth various requirements, including the following: ORDERED that all facts shall be stipulated to the maximum extent possible. All documentary *558 and written evidence shall be marked and stipulated in accordance with Rule 91(b), unless the evidence is to be used to impeach the credibility of a witness. Objections may be preserved in the stipulation. If a complete stipulation of facts is not ready for submission at trial, and if the Court determines that this is the result of either party's failure to fully cooperate in the preparation thereof, the Court may order sanctions against the uncooperative party. Any documents or materials which a party expects to utilize in the event of trial (except for impeachment), but which are not stipulated, shall be identified in writing and exchanged by the parties at least 15 days before the first day of the trial session. The Court may refuse to receive in evidence any document or material not so stipulated or exchanged, unless otherwise agreed by the parties or allowed by the Court for good cause shown. * * *
The parties were also ordered to prepare and serve trial memoranda not less than 15 days before the first day of the trial session and expert reports in accordance with Rule 143(f) at least 30 days before the first day of the trial session. See Rule 25(a)(2). The last *559 "Ordered" paragraph directed that every pleading, motion, letter or other document submitted to the Court subsequent to the date of the notice of trial should be served on every other party and contain a certificate of service as specified in Rule 21(b). On January 15, 1993, petitioner filed a Motion to Strike the additions to tax for negligence determined in the statutory notice. The motion was merely argument by petitioner and another inappropriate attempt to secure summary adjudication on a disputed factual matter without compliance with either Rule 121 or 122. The motion was denied January 26, 1993. On February 25, 1993, petitioner sent a letter to the Court demanding a trial date of May 24, 1993, in order to schedule his expert witness; complaining about the denial of his motion to strike; and making impertinent comments about the prior trial of his earlier case. By letter dated March 2, 1993, petitioner was advised by the Court as follows: The session will be completed during the week of May 17, and it is not possible to schedule your trial for May 24. If you need a time certain to schedule an out-of-town expert, I will set the trial for May 18 or May 19, after I receive *560 the trial memoranda that are due April 30. Those trial memoranda advise me of the witnesses to be called and the estimated time of trial, thus enabling us to set the schedule that uses the Court time most efficiently.
On March 10, 1993, petitioner sent another letter to the Court complaining about denial of his Motion to Strike, particularly without requiring a response from respondent. The balance of the letter was contumacious and scurrilous argument about petitioner's dissatisfaction with the manner in which the Court was conducting its business. Petitioner specifically complained about inadequate notice of the exact date of trial. By Order dated March 17, 1993, petitioner's case was set for trial at a time and date certain of 9:30 a.m. on May 18, 1993; copies of petitioner's various items of correspondence were made a part of the official record of this case; and petitioner was advised: That, notwithstanding the said time and date certain for the trial of this case, in accordance with the Standing Pre-Trial Order served with the Notice Setting Case for Trial, expert reports shall be prepared and submitted at least 30 days before May 17, 1993, and trial memoranda shall *561 be served and submitted on or before April 30, 1993. The parties shall appear at the calendar call at 10:00 a.m. on May 17, 1993, and shall then file their stipulation of facts. It is further ORDERED: That any further communications with the Court relating to this case shall be prepared and submitted in accordance with the Court's Rules or Orders and shall be suitable for filing in this case.
On March 17, 1993, respondent filed a Motion for Protective Order with respect to a request for admissions served by petitioner. Notwithstanding a recital in respondent's motion, copies of the request for admissions were not attached to the motion. The request for admissions had not been filed by petitioner, notwithstanding Rule 90(b). Respondent's motion was denied March 17, 1993. On March 29, 1993, petitioner's Response to Motion for Protective Order was filed. Attached was a copy of the request for admissions theretofore prepared by petitioner, but no proof of service was included. The request for admissions requested that respondent admit that the amounts claimed on the tax returns were expended by petitioner as ordinary and necessary business expenses during the years in issue *562 and that a "presumption of correctness is attached to the return of petitioner" and included other meritless assertions by petitioner. On April 2, 1993, petitioner's Motion for Summary Judgment was filed. The said motion was largely unintelligible but sought summary adjudication that "As a matter of law Michelson is entitled to judgment that he was a metal dealer and filed a correct return for the year before the court." The motion was obviously without merit and was denied April 5, 1993. On April 5, 1993, the Court received a document from petitioner that was filed as petitioner's Motion to Deem Matters Admitted, referring to those requests for admissions previously served on respondent and to a new set of requests for admissions that did not comply with Rule 90. Through his various filings, petitioner was contending that it was unnecessary for him to produce documents substantiating his claimed expenses. By Order dated April 7, 1993, the prior motions and the Court action thereon were summarized, petitioner's Motion to Deem Matters Admitted was denied, and petitioner was advised as follows: ORDERED: That, by service of this Order on petitioner, petitioner is given notice *563 that, in the event that he continues to pursue arguments in this Court that were rejected in the final decision in Michelson v. Commissioner, T.C. Memo. 1990-27, affd. 951 F.2d 288 (10th Cir. 1991), cert. denied 113 S. Ct. 380 (1992), or otherwise extends this proceeding with repetitious, groundless, and frivolous arguments, the Court may require petitioner to pay to the United States a penalty not in excess of $ 25,000, pursuant to section 6673(a)(1), Internal Revenue Code. Among those matters previously decided are that the district court opinion upon which petitioner relies is not evidence that he was a dealer in metals and that petitioner was not a dealer in metals in 1979 and 1980. Petitioner is further reminded that, pursuant to the Standing Pre-Trial Order served December 10, 1992, any documents or materials that he intends to utilize in the event of trial must be stipulated, pursuant to Rule 91, Tax Court Rules of Practice and Procedure, or must be identified in writing and delivered to respondent on or before April 30, 1993. Any documents that petitioner presents at trial in support of *564 claimed deductions that have not been stipulated or so provided to respondent will not be received in evidence.
On April 19, 1993, petitioner filed a Motion to Reconsider, again demanding summary adjudication on the issues in this case and complaining about the Court's rulings. Petitioner, in effect, would require respondent and the Court to spend substantial amount of time responding to and ruling on his frivolous motions. Petitioner's Motion to Reconsider was denied April 21, 1993. Petitioner did not file expert witness reports in compliance with Rule 143(f). He did send to the Court two unsigned documents marked "Expert Report". In one of the documents, petitioner represented that Richard J. Teweles (Teweles), who had testified at petitioner's first trial, would testify on a broad variety of subjects, ranging from commodity futures contracts, through finance, to "any other matter within the scope of the pleadings or the expertise or knowledge of the expert." In the second document, he represented that Ralph Marron (Marron), a certified public accountant (C.P.A.), would testify as an expert on tax law. Petitioner also submitted late his trial memorandum, dated May 7, 1993, *565 in which he estimated 4 days of trial time for petitioner plus 1/2 day for respondent. The trial memorandum, again, set forth petitioner's complaints about respondent's conduct and the Court's rulings and petitioner's demand for summary adjudication in his favor. The case was called on May 17, 1993, for the stipulation of facts, pursuant to the Court's Order of March 17, 1993. The Court inquired whether the parties had an agreement as to expenses to which petitioner was entitled. Respondent's counsel stated that respondent had determined that petitioner would not have to substantiate his expenses but would have to prove that they were ordinary and necessary. The parties were advised that, based on review of the record, the trial should consume less than 4 hours. Petitioner stated that his expert, Teweles, was unavailable, even though the case had been set 2 months earlier to provide for Teweles' availability. Petitioner sought to introduce an affidavit from Teweles that the Court ruled was inadmissible. Petitioner also stated that his second witness was a C.P.A. who had prepared his tax returns and was going to testify as an expert. Then began the first of several arguments *566 between petitioner and the Court on the matter of expert testimony, as follows: THE COURT: He is not going to testify as an expert. He is going to testify as -- MR. MICHELSON: Well, I want him to testify as an expert. THE COURT: He cannot testify as an expert. He can testify about the facts about the preparation of your tax return. MR. MICHELSON: Well, I can -- I won't agree with that. I presented him as an expert. He is an expert at law. He is an expert at accounting. He is an expert in public accounting. He is an expert in all the areas that were -- he is an expert in negligence. He is an expert in income. He is an expert in what categorizes a 162 expense. He is an expert in all of those, and he drew judgments. He is also an expert and has testified as an expert before the Tax Court both in tax law and as a certified public accountant before in this case. If the respondent wants to bring into this issue what was tried before, then I think he has the right and knowledge to testify and help this Court in those areas. THE COURT: He is not going to be allowed to testify as an expert for two reasons: first, that you didn't file an appropriate expert report; and second, *567 that his expert testimony about the law is not admissible. Now, he can be called as a witness. We can have you ask him specific questions, and we will hear objections to specific questions. MR. MICHELSON: Well, I don't think that is -- under Rule 702 of the Federal Rules of Evidence, which this Court is bound by, I think the man qualifies as an expert. What he did was in the area of an expert. He was paid and bought as an expert. And I think that is why he should appear before the Court.
The trial began on May 18, 1993. On no fewer than 10 separate occasions, petitioner insisted that Marron be allowed to testify as an expert notwithstanding the Court's rulings. At the beginning of trial, petitioner sought to introduce as "conclusive evidence" the District Court order, stating as follows: MR. MICHELSON: * * * This Court has already, I think, wrongfully denied under Federal Rules of Evidence 201(d) a mandatory ruling on this document and -- as to taking judicial notice. So I think that we are already in violation of due process as regards this.
Petitioner acknowledged that the document was the subject of the opinion of the Court of Appeals for the Tenth Circuit *568 that had sustained the refusal of this Court to receive it in evidence in the earlier case. Similarly, petitioner argued during the trial that use of Schedules C to report income and expenses was conclusive proof that he operated a business as a sole proprietor. The lack of merit in this circular argument was obvious from our prior opinion and that of the Court of Appeals. Petitioner similarly argued incessantly over the Court's refusal to receive in evidence other documents that petitioner had not exchanged in accordance with the Standing Pre-Trial Order. The only documents that were stipulated, and this stipulation was oral because of petitioner's refusal to execute a written stipulation, were the tax returns for the years in issue and the notice of deficiency. Throughout the trial, petitioner argued with virtually every ruling of the Court. When finally he commenced his own testimony, the Court suggested that he proceed in narrative form rather than in question-and-answer form. He refused to do so and expended substantial amounts of time phrasing questions to himself and answers by himself. Petitioner was repeatedly warned about the necessity of providing relevant information *569 but persisted in ignoring the Court's suggestions, deliberately refusing to proceed as directed by the Court. He spent almost all of his allocated trial time on litigation in which he was engaged during the years in issue. As the hour approached the scheduled time of commencement of trial in a different case, the Court attempted to direct petitioner's testimony to his claimed metals trade or business. The following occurred: THE COURT: * * * Now, if you have any other evidence about what you did in relation to dealing in metals during 1984 and 1985 and 1986, I suggest you turn to that rather than the litigation. THE WITNESS [MR. MICHELSON]: Well, I have presented it in this manner, and I will try and go forward and do what I can to tell the Court about it. THE COURT: All right. Then go ahead for five minutes more, and then I am going to allow for cross-examination on what you have said so far. THE WITNESS: Okay. The -- in, I think, April '86, we took Hunt depositions in Dallas and Conheeney in New York, and Washington, we took more depositions. In May, we spent some time in New York. I spent some time with my warehousemen there. I also spent some time with an insurance *570 adjustor, and I spent some time finding out about the metal business with the various people that I know back there. And for the record, I would say that I wouldn't tell this Court the name of those people for all the tea in China because this Court has harmed me in my relationships. This Court has harmed me in my business -- okay -- from the last proceeding when I honestly testified. So I would not tell them anything that I thought was a trade secret or a document because I think this Court has been unfair.
Because respondent declined the opportunity to cross-examine, the trial was terminated at that time. Petitioner was ordered to make a written offer of proof as to what additional evidence he intended to present and to file his opening brief in 75 days. On June 3, 1993, the Court issued an Order to Show Cause, confirming the prior directions of the Court and ordering: That, in his offer of proof and opening brief hereinabove ordered, petitioner shall show cause in writing why a decision on all or some of the issues in this case should not be entered against him or some lesser sanction imposed, pursuant to Rules 123(a) and (b) and 149(b), Tax Court Rules of Practice *571 and Procedure, by reason of his failure to comply with the Rules and Orders of the Court or to proceed as required by the Court during trial, or otherwise properly to prosecute this case. See generally Kadin Corp. v. United States, 782 F.2d 175, 176 (Fed. Cir. 1986); Henderson v. Duncan, 779 F.2d 1421, 1424-1425 (9th Cir. 1986); Matter of Sanction of Baker, 744 F.2d 1438, 1446 (10th Cir. 1984). In addition, petitioner shall show cause why a penalty in an amount not in excess of $ 25,000 should not be awarded to the United States under section 6673(a), Internal Revenue Code. Said showing shall take into account each and all of the following aspects of petitioner's conduct in this case: 1. Failure to produce for stipulation, in accordance with Rule 91(b), documentary and written evidence that petitioner intended to introduce at trial; 2. Failure to comply with the Court's Standing Pre-Trial Order served December 10, 1992, and the Court's Orders dated March 17, 1993, and April 7, 1993; 3. Refusal to identify or to present evidence at trial of specific business transactions engaged *572 in by him during the years in issue; 4. Refusal to abide by the Court's directions as to the mode and order of interrogating witnesses, under Rule 611, Federal Rules of Evidence; 5. Refusal to abide by the Court's rulings as to exclusion of evidence, under Rule 403, Federal Rules of Evidence; 6. Refusal to acknowledge and abide by the holdings of the Courts in Michelson v. Commissioner, 951 F.2d 288 (10th Cir. 1991), and T.C. Memo. 1990-27; 7. Refusal to abide by the Court's rulings with respect to proffered "expert" testimony excluded for failure to comply with the Court's Rules; 8. Unreasonably multiplying the proceedings by serving on respondent and filing with the Court repetitious, groundless, and frivolous documents containing scurrilous attacks on respondent and on Court personnel; and 9. Otherwise engaging in contumacious conduct with the intent and the effect of interfering with the ability of respondent and of the Court to dispose of this case and others for which they are responsible.
Petitioner, to the date of this opinion, has not responded to the Order to Show Cause and has not *573 filed an offer of proof or a brief. On August 2, 1993, the date on which his offer of proof and opening brief were due, petitioner sent to the Court a motion for extension of time to file trial brief. That document was not filed and was returned to petitioner because of petitioner's failure to provide a sufficient number of copies or to show service of the motion on respondent -- both matters as to which petitioner had specifically been apprised as set forth above. Petitioner never resubmitted to the Court his motion for extension of time. Because respondent had been directed only to file a reply to petitioner's brief and offer of proof, no brief has been received from respondent. Discussion
The lengthy chronology is necessary background to the disposition of this case. Our discussion, however, will be brief. We refer to but do not repeat the specifications of petitioner's conduct set forth in the Order to Show Cause dated June 3, 1993, and the authorities cited therein, as the basis for our disposition of this case. The chronology also shows that petitioner was repeatedly warned of the evidence necessary to prove his case, that he was wasting time arguing irrelevant matters *574 and matters previously decided against him, that the time for trial was limited, and that a penalty might be imposed under section 6673 if he continued to argue matters previously decided against him. He was advised of the necessary showing that he must make to avoid dismissal of the case for failure properly to prosecute or some lesser sanction. Petitioner continued with his own agenda, deliberately ignoring or repudiating the Court's rulings and orders. Rule 123(a) and (b) provides as follows: (a) Default: If any party has failed to plead or otherwise proceed as provided by these Rules or as required by the Court, then such party may be held in default by the Court either on motion of another party or on the initiative of the Court. Thereafter, the Court may enter a decision against the defaulting party, upon such terms and conditions as the Court may deem proper, or may impose such sanctions (see, e.g., Rule 104) as the Court may deem appropriate. The Court may, in its discretion, conduct hearings to ascertain whether a default has been committed, to determine the decision to be entered or the sanctions to be imposed, or to ascertain the truth of any matter. (b) *575 Dismissal: For failure of a petitioner properly to prosecute or to comply with these Rules or any order of the Court or for other cause which the Court deems sufficient, the Court may dismiss a case at any time and enter a decision against the petitioner. The Court may, for similar reasons, decide against any party any issue as to which such party has the burden of proof, and such decision shall be treated as a dismissal for purposes of paragraphs (c) and (d) of this Rule.
Rule 149(b) provides: (b) Failure of Proof: Failure to produce evidence, in support of an issue of fact as to which a party has the burden of proof and which has not been conceded by such party's adversary, may be ground for dismissal or for determination of the affected issue against that party. Facts may be established by stipulation in accordance with Rule 91, but the mere filing of such stipulation does not relieve the party, upon whom rests the burden of proof, of the necessity of properly producing evidence in support of facts not adequately established by such stipulation. As to submission of a case without trial, see Rule 122.
Petitioner's history of failure to comply with our Rules *576 and with the Court's direction to file a brief and specific instructions as to the contents of the brief may justify decision against him on issues as to which he has the burden of proof. Stringer v. Commissioner, 84 T.C. 693, 704-708 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986); Calcutt v. Commissioner, 84 T.C. 716, 721 (1985). On the other hand, if the record justifies a conclusion that petitioner merely abandoned his claims, the case may be decided on the record theretofore made. Id. at 721-722. When a taxpayer refuses to produce evidence in his possession, such as the names of persons involved in particular transactions, he cannot complain if a decision goes against him for failure of proof. Rosenstein v. Commissioner, 32 T.C. 230, 235-238 (1959). The burden on the Court and respondent may be considered in deciding the appropriate disposition of a case after default by the taxpayer. Brooks v. Commissioner, 82 T.C. 413, 429-430 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). *577 A conclusion that petitioner had abandoned his claims in this case would be inconsistent with the entire record. Nonetheless, he has given us no reason to allow him to prolong the proceedings by an opportunity to present further evidence. After considering the circumstances and controlling factors, we conclude that the issues of whether petitioner was in a trade or business and whether he is entitled to a net operating loss carryover should be decided against him by reason of his default. That result, in any event, is appropriate on the merits because petitioner has presented no reason to believe that his situation during the years in issue was any different than that during the earlier years, for which this Court and the Court of Appeals for the Tenth Circuit concluded that he was not in a trade or business and that he was not entitled to the losses that he now seeks to carryover. Petitioner did, however, present the testimony of Marron, the C.P.A. who prepared his tax returns for the years in issue. Marron testified that the returns were prepared solely from summaries and other information provided by petitioner. Marron agreed with petitioner, however, that Marron had advised *578 him that treatment of his transactions as a trade or business on Schedules C for the years in issue was appropriate. Marron did not verify the accuracy of particular amounts on schedules because, he testified, similar amounts had been substantiated to the Internal Revenue Service during earlier audits. Respondent determined that the additions to tax for negligence applied because petitioner's manner of reporting losses had been disallowed on audit for earlier years and deductions had been disallowed for lack of substantiation. At the time the returns in issue were filed, however, petitioner was contesting respondent's position. Respondent's position was not sustained by this Court until after these returns were filed. Respondent has now abandoned the lack of substantiation contention. Respondent's contention now is that petitioner's expenses were not ordinary and necessary business expenses and, by implication, those expenses must be treated as deductible only under section 212. See Michelson v. Commissioner, T.C. Memo. 1990-27, n.1, affd. 951 F.2d 288 (10th Cir. 1991). On balance, we conclude that petitioner is not *579 liable for the additions to tax for negligence. Allowing expenses originally claimed on Schedules C to be deducted under section 212 may render moot additions to tax under section 6661. Also, respondent's determination of self-employment tax should be adjusted in view of the conclusion that petitioner was not in a trade or business. Section 6673(a)(1) provides as follows: (a) Tax Court Proceedings.-- (1) Procedures instituted primarily for delay, etc.--Whenever it appears to the Tax Court that-- (A) proceedings before it have been instituted or maintained by the taxpayer primarily for delay, (B) the taxpayer's position in such proceeding is frivolous or groundless, or (C) the taxpayer unreasonably failed to pursue available administrative remedies,
the Tax Court, in its decision, may require the taxpayer to pay to the United States a penalty not in excess of $ 25,000.
Even though certain issues have been decided in favor of petitioner, his persistence in arguing other frivolous and meritless positions, after repeated warnings by the Court, justifies a penalty under section 6673 in the amount of $ 5,000. Decision will be entered under Rule *580 155.